**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **DAVID LOPEZ,** | § | |
| **Petitioner,** | § | |
| | § | |
| | § | **EP-20-CV-167-DCG** |
| | § | |
| **THOMAS BERGAMI, Warden,** | § | |
| **Respondent.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

David Lopez, Federal Prisoner Number 17702-180, petitions the Court under 28 U.S.C. § 2241 to intervene in his behalf and order Thomas Bergami, the Warden at his current place of confinement, to order his placement in home confinement or release from prison.   Pet'r's Pet., ECF No. 1, p. 2.   His petition is dismissed for the following reasons.

**BACKGROUND**

Lopez is a 60-year-old inmate serving a 293-month sentence imposed after a jury found him guilty of conspiracy to possess with the intent to distribute more than 1,000 kilograms of marijuana and possession with the intent to distribute more than 100 kilograms of marijuana. *United States v. Lopez*, EP-16-CR-896-PRM, Am. J. Crim. Case, ECF No. 172.   He is currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas, with a projected release date of March 19, 2037.   *See* www.bop.gov/inmateloc (search for Reg. No. 17702-180) (last visited June 23, 2020).

Lopez applied for "immediate release" under § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act) on April 7, 2020.   Pet'r's Pet., ECF No. 1-2, Ex. 1, p. 12 (Inmate Request to Staff).   He claimed he was eligible "because of his vulnerability to COVID-19" and his compromised health.   *Id.*

An associate warden denied Lopez's application on May 14, 2020.   *Id*. at p. 14 (Email

Response).   She explained:

> According to your Unit Manager, you currently have a Public Safety Factor for
> Greatest Severity and Sentence Length, with a projected release date of 2037.
> Additionally, you have a pending charge for assault.   Consequently, the
> aforementioned makes your case ineligible as this time.

*Id.*

Lopez now asserts Bergami "abused his discretion" by failing to follow the Attorney

General's March 13, 2020, directive "to grant home confinement to inmates seeking transfer in

connection with the COVID-19 pandemic."   Pet'r's Pet., ECF No. 1, p. 4.   He asks the Court to

order his "release [to] home confinement" pursuant to § 12003(b)(2) of the CARES Act.   *Id*. at

p. 2.   In the alternative, he asks the Court to order his "Compassionate Release" from prison

pursuant to 18 U.S.C. § 3582(c)(1)(A).   *Id.*

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle in

which to raise an attack on "the manner in which a sentence is executed."   *Tolliver v. Dobre*,

211 F.3d 876, 877 (5th Cir. 2000).   However, "[h]abeas corpus relief is extraordinary and 'is

reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if

condoned, result in a complete miscarriage of justice.' "   *Kinder v. Purdy*, 222 F.3d 209, 213

(5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).   To

prevail, a habeas corpus petitioner must show that he is "in custody in violation of the

Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c).

During its initial screening of a habeas corpus petition, a reviewing court accepts a

petitioner's allegations as true.   28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555–56 (2007).   It also evaluates a petition presented by pro se petitioner under more a

lenient standard than it would apply to a petition submitted by counsel.   *Erickson v. Pardus*, 551

U.S. 89, 94 (2007).   But it must still find "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action."   *Twombly*, 550 U.S. at 556.   It must "award the

writ or issue an order directing the respondent to show cause why the writ should not be granted,

unless it plainly appears from the petition and any attached exhibits that the petitioner is not

entitled to relief."   Rule 4 of the Rules Governing § 2254 Cases in the United States District

Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A.  Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether

the petitioner has exhausted his administrative remedies.   *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.

1994) (per curiam).   A petitioner seeking habeas relief must first exhaust all administrative

remedies which might provide appropriate relief before seeking judicial review.   *Id.*; *Rourke v.

Thompson*, 11 F.3d 47, 49 (5th Cir. 1993).   Exhaustion means "proper exhaustion," including

compliance with all administrative deadlines and procedures.   *Cf. Woodford v. Ngo*, 548 U.S 81,

90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The Federal Bureau of Prisons (BOP) uses a multi-tiered administrative remedy program

"to allow an inmate to seek formal review of an issue relating to any aspect of his/her own

confinement."   28 C.F.R. § 542.10(a).   First, the inmate must attempt to resolve the issue

informally with the prison staff.   *Id.* § 542.13(a).   Then, if the inmate cannot resolve the

complaint informally, he must file a formal written administrative remedy request on a BP-9

form directed to the prison warden.   *Id*. § 542.14.   Any adverse decision by the warden must be

appealed to the appropriate regional director by filing a BP-10 form.   *Id*. § 542.15(a).   The final

step in the administrative review process is an appeal to the Office of General Counsel on a

BP-11 form.   *Id*.   If an inmate does not receive a response within the time allotted, he may

consider the absence of a response a denial at that level and proceed to the next level.   *Id*.   An

inmate may seek relief in federal court only after he has exhausted all levels of the administrative

review process.   *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such

remedies are exhausted will the court entertain the application for relief in an appropriate case.").

 "Exceptions to the exhaustion requirement are appropriate where the available

administrative remedies either are unavailable or wholly inappropriate to the relief sought, or

where the attempt to exhaust such remedies would itself be a patently futile course of action."

*Fuller*, 11 F.3d at 62 (internal citations omitted).   Exceptions may be made only in

"extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility

of administrative review.   *Id.*

 Lopez had the BOP administrative review process, as described above, available to

address his claims.   The documents submitted by Lopez show he applied for "immediate

release" under the CARES Act with his unit manager.   Pet'r's Pet., ECF No. 1-2, Ex. 1, p. 12.

They further show an assistant warden denied the application because he had a "Public Safety

Factor for Greatest Severity and Sentence Length [and] a pending charge for assault."   *Id.* at p.

14.   They do not suggest he pursued an appeal of the decision.   Lopez concedes as much.

Pet'r's Pet., ECF No. 1, pp 5–7.   If Lopez had a meritorious claim, there is nothing to suggest

-4-

that the BOP would not afford him relief through its administrative remedy process.   And if the

BOP made an error concerning his application, the BOP should be given an opportunity to

correct the error before Lopez is permitted to seek judicial intervention.   Indeed, an attempt by

Lopez to exhaust through the BOP administrative review process would clearly not be a patently

futile course of action.    While "[i]t is true that exhaustion . . . takes time, . . . there is no reason

to assume that . . . prison administrators . . . will not act expeditiously."   *Preiser v. Rodriguez*,

411 U.S. 475, 494–95 (1973).

Hence, the Court finds Lopez has not exhausted and dismissal is warranted on this basis

alone.   *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming

dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).   But even

if Lopez had properly exhausted, the Court would still not grant him § 2241 relief.

### B.  Merits

#### (1) The CARES Act

Lopez applied for "immediate release" under the CARES Act.   Pet'r's Pet., ECF No. 1-

2, Ex. 1, p. 12.   Section 12003(b)(2) of the CARES Act provides authority for the Attorney

General to place more prisoners in home confinement:

> During the covered emergency period, if the Attorney General finds that emergency
> conditions will materially affect the functioning of the Bureau, the Director of the
> Bureau may lengthen the maximum amount of time for which the Director is
> authorized to place a prisoner in home confinement under the first sentence of
> section 3624(c)(2) of title 18, United States Code, as the Director determines
> appropriate.

CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27,

2020, 134 Stat 281.

Pursuant § 12003(b)(2), Attorney General William Barr issued a memorandum on April 3, 2020, instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at . . . BOP facilities where COVID-19 is materially affecting operations."   *See* "Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited April 22, 2020).

The BOP is currently reviewing prisoners for release, removal, or furlough under the standards issued by the Centers for Disease Control and Prevention for persons at heightened risk from COVID-19.   While the CARES Act gives the BOP broad discretion during the COVID-19 pandemic, it does not grant the courts the authority to release, remove, furlough or place prisoners.   *See United States v. McCann*, No. 5:13-52, 2020 WL 1901089, at *3 (E.D. K Apr. 17, 2020) ("the Court has no authority under this provision to order that a prisoner be placed on home confinement"); *United States v. Read-Forbes*, CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("the Court lacks jurisdiction to order home detention under this provision"); *United States v. Doshi*, No. 13-CR-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 21, 2020) ("the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons").   Hence, the Court may not, on its own, order Lopez's release or placement in home confinement under the CARES Act.

But Lopez asserts Bergami "abused his discretion" by failing to follow the Attorney General's directive "to grant home confinement to inmates seeking transfer in connection with the COVID-19 pandemic."   Pet'r's Pet., ECF No. 1, p. 4.   He suggests Bergami failed to comply with the Attorney General's instruction "to consider the totality of the circumstances for

-6-

each individual inmate, the statutory requirements for home confinement and additional eligibility factors."   *Id.*

A court applies a "two-step process" to determine whether an administrator abuses his discretion regarding a policy interpretation.   *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).   First, the court determines whether the administrator's "determination was *legally correct*.   If so, the inquiry ends and there is no abuse of discretion." *Id*. (emphasis added).   "In answering the first question . . . a court must consider: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."   *Gosselink v. Am. Tel. & Tel., Inc*., 272 F.3d 722, 726 (5th Cir. 2001).   If, however, "the court finds the administrator's interpretation was *legally incorrect*, the court must then determine whether the administrator's decision was an abuse of discretion." *Stone*, 570 F.3d at 257 (emphasis added).   "Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."   *Gosselink*, 272 F.3d at 726.   Additionally, a Court may find an administrator abuses his discretion when his decision is not " 'based on evidence, even if disputable, that clearly supports the basis for its denial.' " *Lain v. UNUM Life Ins. Co*., 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Vega v. Nat'l Life Ins. Servs., Inc*., 188 F.3d 287, 299 (5th Cir. 1999) (en banc)).   A court may make this determination only where "the plan administrator acted arbitrarily or capriciously."   *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc*., 168 F.3d 211, 214 (5th Cir.1999).   "A decision is arbitrary only if

made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quotation marks omitted). A court's " 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.' " *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir.2007) (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999) (en banc)).

The Court notes two statutes govern the discretion of the BOP to place an inmate in a particular facility: 18 U.S.C. § 3621(b), which addresses the imprisonment of a convicted person, and the Second Chance Act, which provides for post-imprisonment rehabilitation services.

Section 3621(b) grants the BOP the authority and discretion to designate the place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and

placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism.   *Id.*   The Act also addresses placement in a community corrections facility, such as a halfway house, or in home confinement.   18 U.S.C. § 3624(c).   It grants the BOP Director the discretion, "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."   *Id.*   "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."   *Id.*   It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community."   *Id.* § 3624(c)(6).

The BOP adopted regulations implementing the Second Chance Act, codified at 28 C.F.R. §§ 570.20–.22, effective October 21, 2008.   Both the statute and the regulations instruct the BOP to determine on the amount of time a prisoner should spend in residential reentry center "in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis."   *Id.*; 28 C.F.R. § 570.22.   Section 3621(b) instructs the BOP to consider:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment
> was determined to be warranted; or
>     (B)  recommending  a  type  of  penal  or  correctional  facility  as

appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).   The subsection adds, "[n]otwithstanding any other provision of law, a

designation of a place of imprisonment under this subsection *is not reviewable by any court*."

*Id.* (emphasis added).

As a consequence, Bergami could, under the applicable statutes and regulations, properly

consider the nature and circumstances of Lopez's offense as well as the history and

characteristics of Lopez's incarceration before deciding whether to release Lopez or place him in

home confinement.   Bergami had some evidence that Lopez posed a continuing threat to public

safety upon his release.   Lopez had a "Public Safety Factor for Greatest Severity and Sentence

Length [and] a pending charge for assault."   Pet'r's Pet., ECF No. 1-2, Ex. 1, p. 14.   Bergami's

determination that he should deny Lopez placement in home confinement was consistent with a

uniform construction and a fair reading of the applicable laws and policies—and was legally

correct.   Hence, Lopez has not met his burden of showing Bergami abused his discretion, and he

is not entitled to relief.

### (2) 18 U.S.C. § 3582(c)(1)(A)

Lopez also suggest the Court should grant him a compassionate release in accordance

with 18 U.S.C. 3582(c)(1)(A).   Pet'r's Pet., ECF No. 1, p. 2.   Until recently, only the BOP

could move to reduce a term of imprisonment for extraordinary and compelling reasons.   Then

in late 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file

such a motion.   18 U.S.C. § 3582(c)(1)(A) (as amended).   Extraordinary and compelling

reasons could include medical conditions where "[t]he defendant is suffering from a terminal

illness." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N

2019).    Extraordinary and compelling reasons could also include situations where the

defendant is suffering from a medical or physical condition "that substantially diminishes the

ability of the defendant to provide self-care within the environment of a correctional facility and

from which he or she is not expected to recover."    *Id*.    But a defendant may pursue a motion to

modify a sentence for "extraordinary and compelling reasons" only when he "has fully exhausted

all administrative rights" or after "the lapse of 30 days from the receipt of such a request [to

modify a sentence] by the warden of [his] facility."    18 U.S.C. § 3582(c)(1)(A*); s*ee

*Mohrbacher v. Ponce*, No. CV 18-00513-DMG, 2019 WL 161727 (C.D. Cal. Jan. 10, 2019)

(discussing modifications made to § 3582(c)(1)(A) by the First Step Act); *United States v. Curry*,

No. CR 6:06-082-DCR, 2019 WL 508067 (E.D. Ky. Feb. 8, 2019) (discussing same).    And "[i]f

petitioner . . . seeks to file his own motion for compassionate release, such a motion must be filed

in the sentencing court."    *Brown v. Underwood*, No. 3:19-CV-1706-B-BN, 2019 WL 5580106,

at *2 (N.D. Tex. Aug. 22, 2019), *report and recommendation adopted*, No. 3:19-CV-1706-B,

2019 WL 5579198 (N.D. Tex. Oct. 28, 2019) (quotation marks and citations omitted); *see also*

*Dillon v. United States*, 560 U.S. 817, 827 (2010).

    The Court did not sentence Lopez.    It cannot grant him relief under § 3582(c)(1)(A).

    More importantly, Lopez does not allege he is in custody as a result of a constitutional

violation.    He seeks early release or home confinement based solely on his medical condition

and the threat to his health posed by the COVID-19 pandemic.    "A compassionate release

request is not a matter of illegal or unconstitutional restraint."    *Figueroa v. Chapman*, 347 F.

-11-

App'x 48, 50 (5th Cir. 2009).    Hence, a petition under § 2241 is not the proper means by which

Lopez may obtain the relief he seeks.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Lopez has not only failed to exhaust his administrative

remedies, but also has not shown he is in custody in violation of the Constitution or laws or

treaties of the United States.   The Court concludes, therefore, that it appears from the face of

Lopez' petition and other pleadings that he is not entitled to § 2241 relief.

The Court consequently enters the following orders:

**IT IS ORDERED** that Lopez's "Petition for Writ of Habeas Corpus pursuant to 28

U.S.C. § 2241 to Overturn the Insufficiency of Warden Bergami's Interpretation of the

'Compassionate Release/Reduction of Sentence Procedure, *et al*., in light of A.G. Barr's April

20, 2020 Directive" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to

exhaust his administrative remedies.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this 25th day of June 2020.

_____

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**